UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANJU M.,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>    Defendant. | Case No. 8:18-cv-02267-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

Plaintiff Anju M. ("Plaintiff") applied for Title II disability benefits in January 2015 alleging disability commencing on May 8, 2014. Administrative Record ("AR") 169. On September 28, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by an attorney, appeared and testified, as did a vocational expert ("VE"). AR 38-54. On December 22, 2017, the ALJ issued an unfavorable decision. AR 18-37. The ALJ

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

found that Plaintiff suffered from the severe impairments of major depressive disorder, anxiety disorder, and post-traumatic stress disorder. AR 23. The ALJ concluded that despite these impairments, Plaintiff had a residual functional capacity ("RFC") to perform work at all exertional levels with the following non-exertional limitations:

> [S]he would be most successful in an occupation without high production quotas and not in a fast-paced work environment, and where she would perform routine and repetitive tasks, of the complexity no higher than that of SVP 3 work; she can be around people, with only superficial interactions.

AR 27.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could not perform her past relevant work as a customer service representative, but could perform the jobs of packer (Dictionary of Occupational Titles ["DOT"] 579.685-038), checker/weigher (DOT 369.687-014), and cleaner (DOT 381.687-018) (collectively, the "Alternative Jobs"). AR 32. The ALJ concluded that Plaintiff was not disabled. AR 33.

## II.
## ISSUES PRESENTED

<u>Issue One</u>: "Whether the ALJ expressed a residual functional capacity."

<u>Issue Two</u>: Whether substantial evidence supports the ALJ's finding that Plaintiff could perform the Alternative Jobs.

(Dkt. 19, Joint Stipulation ["JS"] at 4.)

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on

the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla, but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the district court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination."  Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

## IV.
## DISCUSSION

**A. ISSUE ONE: The ALJ's Wording of the RFC.**

Plaintiff takes issue with the manner in which the ALJ worded her RFC determination.  (JS at 5.)  Plaintiff argues that the ALJ was required to permit or prohibit certain working conditions or tasks but failed to do so by using the phrase, "she would be most successful …."  (Id.)

The ALJ used this language in framing the hypothetical question to the VE; the ALJ directed the VE to assume that a person with Plaintiff's vocational profile

3

would be "most successful" in performing routine and repetitive tasks without high production quotas, not a fast-paced work environment, and working around other people limited to superficial interaction. AR 50-51. Plaintiff argues that because the ALJ did not instruct the VE to assume that these conditions were prohibited, the ALJ's answer is not substantial evidence supporting a finding that Plaintiff could perform the Alternative Jobs. (JS at 6.)

Plaintiff fails to show prejudicial error. The ALJ's intent to restrict Plaintiff against the above-listed working conditions was clear in the hypothetical posed to the VE, and the VE had no trouble understanding it. AR 50-52. Nothing in the DOT or the VE's testimony suggests that the Alternative Jobs are inconsistent with a prohibition against high production quotas, a fast-paced work environment, or greater than superficial social interactions. Cf. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("It is true that the ALJ did not recite the magic words, 'I reject Dr. Fox's opinion about the onset date because....' But our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

**B. ISSUE TWO: Plaintiff's Ability to Perform the Alternative Jobs.**

Plaintiff argues that the information on O*NET OnLine contradicts or supplements the DOT's "cognitive-social-interactional requirements" for the Alternative Jobs, such that remand is required.[2] (JS at 11-12.) O*NET is a "free online database that contains hundreds of occupational definitions . . . developed under the sponsorship of the US Department of Labor/Employment and Training Administration." See https://en.m.wikipedia.org/wiki/Occupational_Information_Network.

---

[2] Plaintiff submitted this information to the Appeals Council on review, as well as information from the Occupational Requirements Survey. See AR 244-71. Plaintiff discusses only O*NET in the Joint Stipulation.

Plaintiff first argues that the "statistical evidence from the O*NET OnLine is uncontradicted in the record." (JS at 11.) Not so. Plaintiff presented the data in an attempt to rebut the VE's contrary opinion testimony that a person limited to superficial social interactions could perform the Alternative Jobs.

Plaintiff next argues that the VE "provided no basis for resolving that conflict." (Id.) According to Plaintiff, the VE's testimony cannot be substantial evidence, because a "reasonable mind would not accept untethered an unexplained vocational expert testimony that contradicts the statistical evidence presented by the Department of Labor …." (Id. at 12.)

Of course, the VE did not address the O*NET OnLine statistics because Plaintiff did not submit them until long after the VE testified. It would be extreme gamesmanship if social security disability claimants were permitted to attend the ALJ's hearing, learn the alternative jobs proposed by the VE, stay silent while the ALJ finalizes a written decision, submit previously available vocational evidence to the Appeals Council, and then obtain remand (and a contingency fee award for counsel) solely because the VE never considered the "new" vocational evidence.[3] Plaintiff's underlying argument, rather, is that the VE's testimony is undermined by the "new" evidence, such that substantial evidence no longer supports the ALJ's decision.

In general, a VE's testimony (based on the DOT and experience) can be substantial evidence on which an ALJ is entitled to rely. Biestek v. Berryhill, __ U.S. __, 139 S.Ct. 1148 (2019); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or

---

[3] Plaintiff argues that claimants "are in a poor position to respond to hearing testimony because of the inherent surprise nature of all vocational expert testimony," citing a case from 2008. (JS at 15.) At Plaintiff's administrative hearing in 2017, however, the Court expects that laptops and wireless Internet access would have been available.

5

her testimony"). In this case, the evidence presented by Plaintiff does not undermine the ALJ's reliance on the VE.

The DOT describes the primary tasks of the packer job as, "Tends machine that compresses stack of mineral wool insulation batts and inserts them into bag cover: Starts machine and compressing mechanism. Opens and slides bag cover over form for filling. Pulls lever to operate discharge mechanism and force stack into bag. Slides package onto table for stapling." DOT 579.685-038. The DOT rates "taking instructions – helping" as "not significant" for this job and "talking" as "not present." Id.

The DOT describes the primary tasks of the checker job as inspecting laundered items for cleanliness, folding, hanging, wrapping, and counting linens. DOT 369.687-014. Again, taking instructions from others is "not significant" and talking is "not present." Id.

Finally, the DOT describes the primary tasks of the cleaner job as cleaning, scrubbing, and tidying industrial premises. DOT 381.687-018. Yet again, taking instructions from others is "not significant" and talking is "not present." Id.

Plaintiff provides no explanation as to why the uninterpreted O*Net data should be treated as more authoritative than the DOT. The kinds of tasks included in the DOT's descriptions of the Alternative Jobs are tasks that common experience suggests can be done without more than superficial social interactions, and it does not appear that the Alternative Jobs are obsolete, which might require relying on a more recent source of information. Contrast Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) ("While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted. The two relevant descriptions here—document preparer and security camera monitor—strike us as potentially vulnerable for this reason. Without more,

however, we cannot adequately review whether these job descriptions were up-to-date and, thus, whether the VE's testimony was reliable."); see also Hamilton v. Berryhill, No. 4:17-CV-00053-HBB, 2018 WL 1324163, at *5 (W.D. Ky. Mar. 14, 2018) ("Here, a review of the occupations cited at the administrative hearing does not create an immediate, common sense reaction that the jobs are likely obsolete[, unlike the occupation of ticket taker.] Thus, the undersigned does not find the cited occupations in this case (mail sorter, produce sorter, and laundry folder) present a similarly apparent risk of obsolescence.").

Furthermore, Plaintiff's data does not suggest obvious discrepancies between the DOT and O*NET with respect to the required type of social interaction. Plaintiff's data is not accompanied by any expert explanation, and it could be reasonably understood in different ways. The ALJ restricted Plaintiff to "superficial interaction" with others. The O*NET statistics discuss "contact with others . . . (face-to-face, by telephone, or otherwise)" (see, e.g., AR 255); it is unclear if "contact" and "interaction" mean the same thing. The limitation to "superficial" interaction suggests that the character of Plaintiff's interactions with others should not be complex. See Quintanilla v. Berryhill, No. CV 16-01043-DFM, 2017 WL 1433306, at *4 (C.D. Cal. Apr. 21, 2017) ("Nothing else in the descriptions for the identified jobs indicates that they involve more complex than superficial interaction with coworkers and supervisors."). The O*NET data does not suggest that any of the Alternative Jobs would require complex or high-stakes interactions with others. For example, the statistic that "janitors have responsibility for the health and safety of others in all but 4% of jobs" probably does not mean that 96% of janitorial positions require making high-stakes safety decisions, but instead means that failing to clean restrooms properly may cause health risks. Contrast Bloodworth v. Berryhill, No. 4:17-CV-00104-HBB, 2018 WL 2435427, at *13 (W.D. Ky. May 30, 2018) ("The above identified discrepancies, between the DOT and O*NET, present sufficient doubt as to the

reliability of the vocational expert's testimony to warrant a conclusion that the ALJ's step five determination.").

Last, the Court suspects that any error would be harmless. With respect to the job of "checker (laundry & related)," Plaintiff presented O*NET evidence to the Appeals Council for the job of "inspectors, testers, sorters, samples, and weighers." See AR 264-65. This O*NET occupation is so much broader than "checker (laundry & related)" that the related statistics could be completely inapplicable to the job the VE actually testified about. The VE testified that 50,000 checker jobs are available nationally. See AR 51. This is a sufficient number of jobs to render Plaintiff not disabled, even if she could not perform the other two Alternative Jobs described in the O*NET statistics. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014) (finding that 25,000 jobs represents a significant number of jobs in several regions of the country).

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED: November 06, 2019

_____
KAREN E. SCOTT
United States Magistrate Judge